Please be seated. Welcome to the Court of Appeals. We have one case we'll hear today, and we're ready to proceed with argument on that to hear from the appellants in United States v. Jones. May it please the Court, I'm Rudy Ashton. I'm an attorney from New Bern, North Carolina, and I represent Lawrence Jones on this case. A couple weeks ago we received a directive from the Court to discuss United States v. Bright, which the issue there was a leadership role enhancement. I believe Mr. Bright had a three-level leadership role. Mr. Lawrence received a four-level leadership role enhancement. Glad to have you here, Mr. Ashton, from New Bern, North Carolina. Thank you. Actually, I grew up here in Richmond. Anyway, Mr. Bright, the issue there was the standard of review or whatever was Evans and which cited Evans and then Bright was the Pinkerton conspiracy standard instead of the guideline, more narrow standard of relevant conduct. And that's the issue here is what the district courts does in this particular case. The trial attorney contended Mr. Jones was not a leadership role. One, there was not enough evidence that he actually was an organizer or a leader or a manager or a supervisor. And the second was that his activity, Mr. Jones' activity, did not include five or more participants. I do want to clarify one thing. The government's brief indicated we conceded there were more than five participants, and I think I've responded in my reply brief, but in the initial brief we contended that the people named in the indictment and involved in various aspects of the scheme exceeded five persons. But that in and of itself does not determine whether or not a leadership role should be imposed. The nature of the participation in the conspiracy was a loose group of people buying and selling drugs and making their own profit. And so just because there is a conspiracy and there are a I think in this case there were nine of them, Mr. Lawrence Jones being one, they're not necessarily involved. And the district court judge in this case did the same thing as we saw in Bright and Evans, where they basically read or parroted the indictment itself, and everyone in the indictment was included. And it's our position that that's not what was done. And Judge Debra used people who we would, uh, led, I think was argued were independent contractors as such. Uh, the Kelly brothers, uh, spelled differently, but they were brothers were, we would say independent contractors. Not sure who is a leader there or not. I mean, they were supplying drugs to Mr. Jones and actually took the laboring or on that part. Uh, several of the co defendants, Judge Debra mentioned in in this, uh, never even came up at all during the trial. One of them was dealing with just marijuana. Uh, he included the two girlfriends in his participants. And the way I look at the definition of participants, they asked to be some criminal responsibility, even if they're not charged. And basically, I did not see any evidence in the case that these two girlfriends were participants or had anything to do with the running of this organization. Wait, isn't one of these girlfriends one of the people he called and the district court construed as a way of saying, please hide evidence of my criminal conspiracy? Well, that one of those girlfriends, at least one of those girlfriends, I believe a I understand that he you have an argument that it meant something else. But the district court found that it meant please go hide the evidence of my criminal conspiracy. Right. And that goes to our third argument. Well, sure. But if we posit that that was in fact a statement, please go hide the evidence of my criminal conspiracy. That is the defendant directing someone in connection with the criminal conspiracy. Because hide the evidence of the criminal conspiracy is a portion of the criminal conspiracy, right? Well, it can be in this particular case. I'm not sure exactly what was said on that telephone conversation, but it was to to get the money. It was recorded by the jail. They got search warrants. They were able to go in there and search the places. The money was still there. And actually, as I said on the on the other issue, it didn't materially affect the investigation. Matter of fact, it helped us. That's why they ended up recovering the money that way. And and the girls didn't do anything. So they were not charged. But they don't have to be charged to trigger this guidelines enhancement. The other people that you're supervising do not have to be charged, much less convicted of a crime. Right? Correct. But the girls never did anything. They never. They didn't hide the money. They didn't do anything with it because because of the phone call, the government was able to recover the money. And the young ladies never actually did anything to progressive conspiracy. If they've been caught hiding the money or something, that'd be another matter. And so it's our position that they were not technically participants. And that and if you take out some of the others who were not mentioned at all in the trial, and then we get into the Kelly's, what were the Kelly's? Calvin was the driver for his brother, Wesley. And Wesley actually, I think, contacted Lawrence Jones to start playing ball. I'm just trying to see how this compares to Bright, because I'm looking at the relevant section of Bright. And in Bright, we said, the district court did not make particularized findings regarding the scope of the criminal activity, nor did the district court determine that the criminal activity was otherwise extensive. The district court simply stated, during a patent sentencing argument, I've got, and then gave four names. That's basically what we said the district court did in Bright. So now I look at what the district court says here on page A679, and the court says actually quite a lot more than that, right? It says, first of all, this was a massively expansive conspiracy. It then says the defendant has decision making authority, that he's at the very top. It then says the nature of the participation. I mean, the court says quite a bit more in this case than what we at least summarize the district court as having said in Bright. Well, he said quite a bit more, but he also basically parroted the indictment. Everybody, all nine people in the indictment were indicted. Judge Dever read all of those off, and he included a couple of people that weren't indicted. He included the two girlfriends, which we submit should not be in the leadership role enhancement. And... Could I ask... Unless you have something else to say on that, could I ask you about your evidentiary argument? Sir? Your evidentiary argument. Could I please ask you about that? What is... This is the Kelly testimony, the impeachment by the prior conviction evidence. I really genuinely mean this, I read your brief. What is your theory of relevance for that testimony? Because in order to decide whether you can sort of win this reverse 403 balancing requirement, I first have to understand what the theory of relevance is. Is the theory of relevance just, he did something bad in the past, therefore the jury should think he's a liar, or is it a character evidence theory that because he did something in the past, he's more likely to do that thing again? What is the theory of relevance of why that testimony should have been admitted? Now, okay. You're going back to argument number one? I believe it was argument one. It's the argument that the district court erred in not letting you cross examine the government's cooperator on his prior criminal conviction. Right. Our position in number one, two things basically. Kelly was the most important witness. He was the only co defendant testifying. Oh, no. I understand why you'd like... Why the defense would have liked to do anything they possibly could to make Kelly look bad, but that itself isn't a theory of relevance. Well, I believe the... As far as I know, what I argue is the issue of credibility. And I think the fact he had two prior federal drug convictions, even if they were over 10 years ago... Sure. But here's the problem. This conviction is more than... Credibility. But that doesn't get you there because the rule rejects that idea. Rule 609B says, after 10 years, the presumption is the conviction doesn't come in. And then it says, unless it's probative value supported by specific facts and circumstances substantially outweighs its prejudicial effect. And in both your brief and what you're saying this morning, all I'm hearing is it goes to his credibility. Well, my answer to that is every single stale criminal conviction goes to someone's credibility. And the rule says that's not enough because after 10 years, you need something more, something about the specifics of this case that take us out of the normal rule. The normal rule is that convictions that are more than 10 years old are out. And so I don't think it's enough just to say it makes him look bad, it affects his credibility because that is an argument for admitting any stale conviction. It's not an argument specifically for admitting this one. So what's the argument for admitting this one? Well, in this particular case, of course, it goes to credibility, but there are also a plea agreement. That all came in. He certainly got a reduced sentence. I'm gonna take as a conclusion that virtually every cooperating witness at a criminal trial who has prior convictions has a plea agreement. But there... Also, there was a particular case, one of the provisions of Rule 609 is it's not prejudiced, the government or the prosecutor or the witness themselves because it's over 10 years old. But in this particular case, there was no prejudice to Kelly... But again, that's... Putting that information in because he was given a good deal for cooperating. But that's an argument, again, that you could admit stale convictions against any cooperator in any criminal case. Well, I think the fact is... The rule would be a lot simpler to write if we could say, if they're a cooperator, it always comes in, but that's not what the rule says. Well, I understand. But this particular case, I think the fact there were two prior convictions and they were both drug convictions and they were both federal drug convictions, it's different than had they been state. In other words, he'd been around the block twice on this and he gets caught the third time and then finally he cooperates. It seems to me your argument, at least what I would call it in brief, was that the fact that he had these prior convictions and he was familiar with the drug sentencing process, he's more likely to take that deal and to testify to some extent. Maybe that was where you were going with it. The problem though, there is a distinction between the convictions that are more than 10 years old and less than 10 years old on 609 A and B. And I had to go back and look at it myself to think about it because it seemed to me that in a case, almost all cases in which you're looking at what you call the prejudicial fact, if a 609 conviction dealing with a defendant, oh, there's an obvious prejudicial fact. But with a witness, it's different. But when you look at 609 B, the language is different. And so I guess you rarely get those convictions in, whether you are a witness, a non-defendant witness or a defendant in it. So that's the problem here. And then ultimately it comes down to the judge making the decision on it. So it seems, you know, your point is well taken, but I don't know if the case law has gone in your direction on it. Well, I fully understand. And this was unusual. And apparently this issue came up during a luncheon recess. They were coming back from a luncheon recess. And it's like all of a sudden it's there. They bring it to the lawyer's attention. I mean, intuitively, without the statute, you would think if you got a witness on the stand, you ought to be able to talk about his prior conviction, especially when it's been dealing with the Federal Sentencing Act. I don't care if it was 10, 15 years ago. He takes a deal on it. That seems to do it. But the statute is pretty clear on it. And they made that demarcation with 10 years on it. You don't get that special bump up, whether you're defendant or non-defendant on it. Right. Well, I fully understand. I'm just asking this particular case, especially since he was the only co-defendant testifying, it would have been certainly helpful to Mr. Jones to have him cross-examined about that. Let me ask you one question in terms of ultimate. Even if you won on these enhancements, would it change the sentence? I mean, he's a career defendant, a career offender anyway. Does it change the sentence in it? It would. Well, if we win this, at least we're rolling hammer. That's four levels. And then the obstruction of justice is two. And that's dependent on this one. So that would drop off, too. That's two more levels. But he's a career offender. Can't you give him the same sentence? I'd have to go back and re-look at it. It's close. I think it would have gotten him down to possibly maybe two levels less in the long run when you look at it. But the other thing, too, if the judges are basing their decision on what Evans and Bright said, they should, everybody in the conspiracy, then if that's wrong, it's our position they should be able to go back and be re-sentenced. And maybe, I know the lawyer asked for some type of departure because 480 months is a lot of time. And at least it ought to go back if they're using the wrong principle simply to give the trial judge an opportunity to say, well, yes. Now, these other people aren't involved. Maybe I can give them some type of slack. I think Mr. Williams, the attorney, did ask for a departure or a variance or something to get them down because of the great extent of the case. All right, Mr. Ashton. We've got you down for an additional five minutes of rebuttal after we hear from the government's attorney, Mr. Booth. Very good. Thank you.  Good to see you, Mr. Booth. How was the drive up? I take it you came from Raleigh. Actually, I came from Washington, D.C., Judge. You came the other way. I appreciate the comment, Judge Wing. I would like to discuss the impact of Bright since this court asked the parties to be aware of it. And in that case, Bright held that the district court erred in applying a leadership enhancement under 3B1.1a because the court used an incorrect Pinkerton standard in assessing the defendant's liability. And it also found it didn't make adequate factual findings. And so that was a procedural error that required a remand for further factual findings. I have four answers to that. First, Bright doesn't apply substantively because the district court expressly found that the conspiracy was otherwise extensive. And that's a JA679. And that's enough to satisfy the participant requirement to impose a leadership enhancement. So you have that specific finding. Our argument here is that's not clearly erroneous. In addition, the evidence also showed that the crime involved at least five participants. And our argument was Jones controlled the stash house. And four other persons involving the two Kellys, McNeil and Bragg, had roles at the stash house. Bragg, for example, was the nominee lessee. McNeil got drugs there. So the district court's finding that there were five or more participants is also not clearly erroneous. So that element for 3B1.1a is satisfied. In addition, there are two procedural problems in this case. First of all, Jones did not raise in the district court, he didn't raise that the district court had made an error in not making sufficient factual findings with respect to 3B1.1a. So as there was no objection, we would submit the issue would be forfeited on appeal under the Supreme Court's decision in Rosales-Morales, which is at 585 U.S. 129. In addition, another problem in Bright was that the district court there improperly conflated the Pinkerton standard for liability with the 1B1.3 relevant conduct standard for determining co-conspirator liability under the guidelines. There's no evidence in this case that the district court misapplied the standard for co-conspirator liability. He didn't cite Pinkerton, for example, and there is a presumption in the law that when the record does not indicate the correct standard, legal standard used by the judge, he is presumed to have applied the correct standard. There is at least one decision from this court on that point, I think it's the Gross case at 90-Fed-4th-7-5-15, which was written by Judge Heidens, and there's also a number of Supreme Court cases that hold that. One of them is Washington v. Witt, which is at 469 U.S. 412. So our position is that Bright really doesn't have any application here and that the district court's 3B1.1 leadership enhancement finding is not clearly erroneous and should be upheld. So in Bright, the court said that the district court must make particularized findings regarding the scope of criminal activity, and that's on the otherwise extensive aspect. And I'm looking at the transcript and the district court does say that the activity was otherwise extensive, but I don't see particularized findings to support that finding. It's simply a declaration. It was otherwise extensive, but I don't see at least particularized findings to support that statement. Can you point me to what statements in the district court transcript? Well, the district court's transcript also then goes through a series of findings when he talks about Jones's activity here. And earlier on, he mentioned the number of participants. The number of participants is not the issue that I'm raising. I'm raising the issue of the otherwise extensive prong, which in Bright made clear that there needed to be particularized findings regarding the scope of criminal activity. Where are the particularized findings in this sentencing transcript?  There are no otherwise specific findings with respect to the otherwise extensive finding. But in Bright, what the court... Isn't that what Bright says, that there need to be particularized findings to support the otherwise extensive finding? Judge Berner, what happened in Bright was that the court said that the district court made no finding of otherwise extensive. What the court was concerned about in Bright was not that there may have had to have been some additional findings on otherwise extensive, which we believe, by the way, the record at trial shows that this was a very extensive operation. But the error in Bright was not that there was an insufficient finding on otherwise extensive. It was the district court made no finding at all on that point. And therefore, because of that, this court could not uphold the determination by the district court there that there had been five or more participants. See, that's why in Bright, this court directed the district court in Bright to go back and make findings with respect to the number of participants and, of course, to explain why they were participants and otherwise to make a finding of otherwise extensive. See, the five... How isn't this a finding of otherwise extensive? He was sourcing an incredible large volume of narcotics from New Jersey and California. That sounds like a statement about the scope of the criminal activity. I agree with you, Judge Hydens. The district court, and you had mentioned that earlier in your comments to the defense counsel, the findings by the judge in this particular case are much more extensive than they were in Bright. He says, for example, yes, as you pointed out, he's at the top of this DTO. He's sourcing an incredible large volume of narcotics from New Jersey and California. He was recruiting accomplices as was reflected in the trial record. He was obviously claiming a right to the larger share of the fruits of the crime as reflected by what was found at the Stash House. And remember, what was found at the Stash House are two firearms, several kilograms of cocaine, there's marijuana, there's drug paraphernalia, there's records to show that this Stash House was used extensively in the trial record shows it wasn't just the time that the agents went in on July 22nd and seized the cocaine and marijuana there, is that the Kellys had been delivering marijuana to that Stash House earlier. And in addition, at one particular point, the defendant Jones gave the Kellys $475,000. That shows that this conspiracy, and I say this to you, Judge Burton, when you have that amount of money, this is an otherwise extensive conspiracy. This is not a mom and pop operation on a street corner. This is almost half a million dollars at one particular time. And then you have Jones going all the way to California and telling the Kellys to bring back some marijuana. He goes, gets some cocaine on his own and then tells the Kellys, please bring back the cocaine when you come and deliver this marijuana. This is a massive, extensive drug organization. And the findings in this case are absolutely adequate. And in our position, the bribe does not apply at all. Judge Heidens, you had some questions. In 609, can I ask you a threshold question? The defendant's not raising this, but when I read this, my ears perked up and I just... How is telling the defendant that you have information that your key cooperator has a felony conviction on the day of trial orally, how does that satisfy like Brady and Giglio? Why should I not be concerned about a Giglio problem in this case? It feels a little strange that we're telling the defendant this fact, like in the middle of the trial. It does sound odd. And because there is no explanation in the record, I am not going to presume a justification. I simply don't know. This would not be general practice to tell the defendant in the middle of trial that the key cooperator has some convictions. I agree because the rule itself, 609, does say that prior notice is required. And you're right that this was in the middle of the trial. We don't have any further explanation. The judge didn't ask for an explanation. And I don't have a supposition or I'm not going to tell you something that I have no knowledge of. Okay, so this question is the inverse of the question I asked your colleague. The question your colleague was, what specifically about this case makes this stale conviction admissible? Because that's the concern I have about their position. I realize this is a statement against interest, but I guess I'm just trying to understand what 609B is thinking of. Supported by specific facts and circumstances of the case. Without asking you to give away any particular case on behalf of the government, what kind of case do you think 609B is thinking about? Where it says, sometimes, if supported by the facts and circumstances of the case, specific stale convictions are admissible for impeachment purposes. What kinds of cases do you think 609B is thinking about there? That is speaking of the case in which the government witness is the absolutely crucial witness on a particular element of the offense or on the case as a whole. And without this particular witness, the government's case might crumble. Unlike a case like this where the government corroborated Kelly's testimony with wiretap evidence. And just to put that in the language of the Federal Rules of Evidence then, because the idea then is that in that situation, the probative value is so incredibly high. Because then essentially the defendant doesn't have any other way to attack the government's case. Is that just putting it in the language of like the 400 sections of the Rules of Evidence? Well, that would, again, be one of where the witness is a very, very crucial government witness. And the second circumstance, I would say, where the prior conviction involves, for example, a crime of dishonesty. Like a perjury conviction, no matter how old it's coming in. That is because that directly affects the witness's credibility. For truthfulness. For truthfulness, as opposed to some other crimes that, yes, they may be heinous, they may be aggravating, they may be serious offenses, but they don't necessarily go to truthfulness. So if, for example, and I'm not saying it would have been a different in this case, if Kelly had had a prior conviction over 10 years old for, again, making false statements in a case, as you pointed out, for perjury or something else, the district court might have abused its discretion in coming out the other way. But I would, again, imagine, I just want to pivot off to another point. In cases involving a district court's decision to make probative and prejudicial determinate, like in 403. We're extremely deferential to the district court. I could have said it better myself, Judge Hyden. But again, I think this situation, the two situations I'm thinking about when it does come in, the government witness is the most crucial witness on a particular point or on the case in itself, or the prior conviction involves a crime of dishonesty. Otherwise, in this particular case, I mean, let's face it. Kelly admitted that he was involved. He admitted he was involved in drugs even before he met the defendant. He said, I was dealing with a guy named Jay before I met Jones. He admitted his entire participation in this offense. He admitted that he was actually hoping for a reduction in sentence to get his sentence down from 10 to life to life to 40. And on cross-examination, he admitted that he was doing stuff like taking money from people, from SNAP people or something like that. In any event, the idea is that the jury was well aware that this person wasn't exactly a saint. That is correct. I couldn't have said that better myself. I don't have any further questions unless the court does. I'll stand up. Again, Judge Berner, this was otherwise extensive based on the record of trial and based on the judge's findings. All right. Thank you, Mr. Boo. Mr. Ashton, you have a few minutes if you choose to use the rebuttal. Just a couple of brief things. Going back to the, let's see, Mr. Kelly is a key witness. Again, I think that came up with the dialogue there. He was a key witness. He's the only person from the conspiracy I actually testified. And they were like working together. I'm not sure who led who. And there's really no leadership type of thing here. You know, this was a large conspiracy. There's a lot of money involved. There's still nothing to support the leadership. In answer to the question about findings on whether this was otherwise extensive, I did not see any findings specifically addressing that either. That was one of the conditions in Bright that they had to be particularized findings. Judge Devereux mentioned that otherwise extensive, but that's just the buzzword. While this was a large conspiracy, I didn't see anything to support the otherwise extensive as far as Mr. Jones having leadership ability or doing anything that would give him a leadership role. The only other issue that has not actually been addressed was the judgment of acquittal, which only had to do with the firearms. And there's just two points I wanted to make on that. First of all, there's no evidence Mr. Jones ever had a firearm, never was seen with a firearm. Lawyer asked, I think, every witness if they'd ever seen him with one or if they ever heard him having one, and all the answers were in the negative. Secondly, when they did raid 7 North Swain Street and they found some drugs, they found the two firearms between the mattress and the box springs, I believe. And they found $95,000, $96,000 under there. And the money found under the bed and under the guns had Tyrone Bragg's name on it. And he was the one who sort of shared the stash house. And so I think there was some substance to the motion for judgment of acquittal as it went to the firearms. And of course, one of the 924C got Mr. Jones an extra 60 months to a really long sentence. And so we would like certainly that you would re-look at that. Also, if Judge Dever committed a bright error as far as the actual number of people involved, and even if it is more than five, if he conflated that and made more involved, I believe it would be certainly helpful to remand it, to at least let him re-look at it under a different light and possibly give Mr. Jones a new sentence. Based on more of the leadership role itself under Sayles and Slade, I believe this case is a lot more similar to those two cases as far as the leadership role itself and what the leader might do than it is to some of the other cases. And two quick points. One, this case was tried exactly two years ago today. They were right in the middle of this trial. I don't know if anybody noticed that. And in Judge Dever's defense, I believe in Bright, the judge did not have the evidence opinion to deal with. And when Judge Dever was trying this case, he did not have the Bright opinion to deal with either. Thank you. Thank you, Mr. Ashton. Court, I recognize, Mr. Ashton, that you are a court-appointed lawyer and we thank you for undertaking that task. These cases will be very difficult to do without having the service of lawyers like you to take on cases that otherwise defendants aren't able to procure counsel. So thank you for your service. And Mr. Booth, thank you for your able representation of the government. And may you both have a safe trip back home and a happy holiday season. Thank you, same to all of you. I will ask Ms. Sims, our courtroom deputy, to adjourn court sine die and we will conclude court for this term. This honorable court stands adjourned sine die, God save the United States and this honorable court. And we'll come down and recounsel before we leave.
judges: James Andrew Wynn, Toby J. Heytens, Nicole G. Berner